## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Raymond A. Parson, Jr., | Case No. 12-cv-0646 (DWF/DJF) |
| Plaintiff, | |
| v. | **ORDER AND**<br>**REPORT AND RECOMMENDATION** |
| Sharyn L. Barney, Nancy Johnston, Thomas Lundquist, and Department of Human Services, | |
| Defendants. | |

This matter is before the Court for preservice review of Plaintiff Raymond A. Parson, Jr.'s Third Amended Complaint ("3AC") (ECF No. 31). For the reasons set forth below, the Court recommends that the bulk of Mr. Parson's 3AC be dismissed; however, it orders service on Defendant Sharyn L. Barney because a limited portion of Count 1 in the 3AC survives its review under 28 U.S.C. § 1915.

## BACKGROUND

### I.    Case History

Mr. Parson commenced this action in March 2012 by filing a "Complaint for Violations of Civil Rights Under Title 42 [U.S.C.] §1981, §1982, §1983, §1985, §1986, §1988" ("Complaint") (ECF No. 1). The Complaint was over 145 pages long, named dozens of defendants, and asserted thirty-two causes of action. (*See id.* at 1, 118–40.[1]) As relevant here, the Complaint presented wide-ranging attacks on procedures and policies at the Minnesota Sex Offender Program

---

[1]For ease of reference, the Court cites to materials filed in this action using the page numbers generated by the Court's CM/ECF filing system.

("MSOP"), where Mr. Parson has been civilly committed since 2007.  (*See id. at* 42, 118–41; *cf. In re Civ. Commitment of Parson*, No. A08-1731, 2009 WL 818925, at \*1 (Minn. Ct. App. Mar. 31, 2009) (affirming state-court decision ordering Mr. Parson's commitment).)

Less than a week after Mr. Parson filed the Complaint, then–Chief Judge Michael J. Davis entered an order staying this action (and numerous others) because of the then–ongoing class-action litigation in *Karsjens v. Minnesota Department of Human Services*, No. 11-CV-3659 (DWF/TNL) (D. Minn.).  (*See* ECF No. 7 at 12–14.)  Over the years, numerous follow-on orders extended that stay—until October 3, 2022, when Chief Judge Patrick J. Schiltz entered an order lifting it upon final judgment in *Karsjens*.  (*See* Docket; ECF No. 25 at 17, 24–25.)  On October 7, 2022, the Court ordered Mr. Parson to file an amended complaint.  (*See* ECF No. 20 at 4.[2])

Mr. Parson filed a short amended complaint in November 2022.  (*See* ECF No. 21.)  Later that month, the Court noted that this pleading had problems as well:  It did not clearly identify the Defendants' actions and failed to state a claim.  (*See* ECF No. 23 at 1–4.)  The Court ordered Mr. Parson to submit a second amended complaint on or before January 13, 2023 and referred him to the Federal Bar Association ("FBA") for potential assistance from a volunteer lawyer.  (*See id.* at 4.)  The Court later extended the deadline for Mr. Parson to file his second amended complaint until March 14, 2023.  (*See* ECF No. 26.)

As of March 13, 2023, the Court had not received an amended complaint, but based on an ex parte request from Mr. Parson the Court extended the deadline until April 14, 2023 to allow

---

[2] The Court observed that the original Complaint did not present a "short and plain statement of [Mr. Parson's] claim[s]," as required by Rule 8 of the Federal Rules of Civil Procedure and failed to indicate the specific conduct (or omissions) at issue for the numerous individual Defendants.  The Court further noted *Karsjens*'s potential res judicata effect on this action.  (*See* ECF No. 20 at 1–3.)

more time for him to consult with a volunteer attorney, if possible, and to address problems with his printer. (*See, e.g.*, ECF No. 28 at 1.) Coincidentally, on that same day, the Clerk's office received and filed Mr. Parson's second amended complaint ("2AC") (ECF No. 29).[3]

Mr. Larson filed his 3AC on July 10, 2023. (ECF No. 31.) He simultaneously filed a letter stating he was able to receive help from a law firm based on the earlier FBA referral and suggesting the 3AC reflected that assistance. (*See* ECF No. 32 at 1.) The Court subsequently entered an order accepting that filing and establishing the 3AC as the operative pleading in this matter. (ECF No. 33.)

## II.    Third Amended Complaint

The 3AC names four defendants. (*See* ECF No. 31 at 1.) Three are individuals: (1) Sharyn L. Barney, the MSOP's "family medicine doctor … at the time of the events underlying" the 3AC; (2) Nancy Johnston, the MSOP's "[e]xecutive [d]irector"; and (3) Thomas Lundquist, the MSOP's "[h]ealth [c]are [p]rogram [d]irector." (*Id.* at 1–3.) Mr. Parson sues all three individuals in their individual and official capacities. (*See id.* at 1.) The fourth defendant is "Department of Human Services," which the Court construes as the Minnesota Department of Human Services ("MDHS")—"part of the executive branch of the State government of Minnesota," and as relevant here, the agency that oversees the MSOP. (*See id.* at 1, 3.)

Mr. Parson alleges that in 2012–13, during his confinement at the MSOP, he "was asked to participate in a health service assessment to evaluate his medical condition." (*Id.* at 3.) He states that he had a "severe heat rash," as well as "swelling around his neck, arms, hands, and eyes"; "bleeding from his neck and arms"; and an eye infection. (*Id.*) Mr. Parson claims he

---

[3] The 2AC indicates Mr. Parson completed it on or about March 3, 2023, and the envelope conveying the filing is postmarked March 10, 2023. (*See* ECF No. 29 at 1; ECF No. 29-2 at 1.)

reported his condition to various individuals and asked "health service's staff to prescribe the medication needed for treatment." (*Id.*) He says he was told, however, that Defendant Barney would need to "approve the treatment," even though "medications were already specified in [Mr. Parson's] medical record." (*Id.*)

After two days, Mr. Parson met with Defendant Barney. (*See id.*) According to Mr. Parson, Defendant Barney "refused to prescribe the necessary medicines or provide any other type of medical care to treat [Mr. Parson's] condition," and furthermore, "provided no explanation as to why [Mr. Parson] was denied medical care." (*Id.* at 4.) Mr. Parson's medical condition allegedly worsened, and he "continued going to health services every other day to ask for help." (*Id.*) Each time, Defendant Barney "was present … and continued to refuse to provide medical attention." (*Id.*) Mr. Parson alleges Defendant Barney even "mocked" him and threatened to issue disciplinary reports against him and call security if he "did not leave health services." (*Id.*)

Mr. Parson asserts he filed a "formal complaint" against Defendant Barney "before Health Services," and eventually raised the complaint "before the Hospital Review Board" ("HRB"). (*Id.* at 4–5.) After Mr. Parson filed the complaint, Defendant Barney "agreed to have a conversation with [him]." (*Id.* at 5.) But according to Mr. Parson, during this conversation Defendant "Barney expressed herself in a discriminatory matter … using derogatory terms that referred to the color of [his] skin." (*Id.*) He specifically alleges she said, "Blackie, listen boy, you are not in the south no more, you are up north with us now." (*Id.*)

Mr. Parson alleges he reported Defendant Barney's conduct to the MSOP staff, but that he continued to suffer in pain, without medical care, for months. (*See id.*) Mr. Parson asserts that because he did not get proper care, he was temporarily blinded in his left eye, suffered "[m]ental and emotional trauma," and sustained "[p]hysical marks and scars all over his body and constant

headaches." (*Id.*) He also claims lost wages and "future earning capacity" and "[p]ast, present, and future medical expenses." (*Id.*)

Mr. Parson states that he eventually attended a "hearing held in front of the HRB Panel." (*Id*.) He asserts the panel found in favor of him, at which point he "communicated he wished to pursue further action." (*Id.*)

Mr. Parson brings five claims based on these allegations. Count 1 names all Defendants and asserts that his treatment constitutes cruel and unusual punishment in violation of the United States and Minnesota Constitutions. (*See id.* at 6–7.) Count 2 names only Defendant Barney and claims she negligently failed to provide him proper medical care. (*See id.* at 7–9.) Count 3 also names Defendant Barney, claiming her reported conduct constituted race and disability-based discrimination. (*See id.* at 10–12.) In Count 4, Mr. Parson claims Defendants Johnston and Lundquist failed to properly train or supervise Defendant Barney. (*See id.* at 12–14.) Finally, Count 5 claims MDHS had "policies, practices, or customs" leading to violations of his federal rights. (*Id.* at 15; *see also id.* at 14–17.) For relief, Mr. Parson asks for monetary damages; "reasonable attorney fees"; and any "other legal, injunctive, or equitable relief as the Court deems just and fair." (*Id.* at 17.)

## ANALYSIS

### I.    Standard of Review

Rather than pay this action's filing fee, Mr. Parson applied to proceed *in forma pauperis* ("IFP") (ECF No. 2). The Court grated his IFP application on March 31, 2023 (ECF No. 30). The Court now reviews the 3AC under 28 U.S.C. § 1915 as a prerequisite to ordering service on the Defendants. Under section 1915, the federal statute governing IFP proceedings, "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case"—that is, a case brought by an IFP litigant—"at any time if the court determines

that … the action … is frivolous [or] fails to state a claim on which relief may be granted …."  28

U.S.C. § 1915(e)(2).  While the wording here refers to "the case," courts in this District routinely

dismisses portions of cases under this provision as well.  *See, e.g.*, *Frelix v. Hendrie Grant Lending*

*Inc.*, No. 23-CV-0896 (DWF/TNL), 2023 WL 3571906, at *1 n.2 (D. Minn. May 18, 2023) (citing

cases); *Hunter v. Mayo Clinic*, No. 21-CV-0742 (ECT/HB), 2021 WL 1877638, at *2 n.3 (D.

Minn. Apr. 16, 2021) (same), *report and recommendation adopted*, No. 21-CV-742 (ECT/HB),

2021 WL 1873430 (D. Minn. May 10, 2021).

A case is frivolous when "it lacks an arguable basis either in law or in fact."  *Neitzke v.*

*Williams*, 490 U.S. 319, 325 (1989); *see also, e.g.*, *Jones v. Norris*, 310 F.3d 610, 612 (8th

Cir. 2002) (citing *Neitzke*).  With respect to legal frivolity, a claim "lacks an arguable basis in law

if [it] is based on an indisputably meritless legal theory."  *Martinez v. Turner*, 977 F.2d 421, 423

(8th Cir. 1992) (citing *Neitzke*, 490 U.S. at 327); *see also, e.g.*, *Hines v. Minn. Dep't of Corr.*,

No. 18-CV-3250 (ECT/BRT), 2020 WL 1102210, at *11 (D. Minn. Jan. 31, 2020) (same), *report*

*and recommendation adopted*, 2020 WL 1082484 (D. Minn. Mar. 6, 2020).

In determining whether a complaint states a claim on which a court may grant relief, the

court accepts the complaint's factual allegations as true and draws all reasonable inferences in the

plaintiff's favor.  *See, e.g.*, *Varga v. U.S. Bank Nat. Ass'n*, 764 F.3d 833, 836 (8th Cir. 2014) (citing

*Loftness Specialized Farm Equip., Inc. v. Twiestmeyer*, 742 F.3d 845, 854 (8th Cir. 2014)).  A

complaint's factual allegations need not be detailed, but they must "raise a right to relief above the

speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing authorities).  A

complaint must "state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.

662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  A court's consideration of whether a

pleading states a claim is "context-specific" and the court must "draw on its judicial experience

and common sense." *Id.* at 679; *see also, e.g.*, *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (en banc) (quoting *Magee v. Trs. of Hamline Univ.*, 747 F.3d 532, 535 (8th Cir. 2014) (cleaned up)).  Although pro se complaints must be construed liberally, such complaints still must allege sufficient facts to state a claim as a matter of law.  *See, e.g.*, *Sandknop v. Mo. Dep't of Corr.*, 932 F.3d 739, 741 (8th Cir. 2019) (quoting *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).  The Court need not accept as true conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

## II.    Global Issues

### A.    Direct Claims Under the United States Constitution

The Court begins by addressing certain global issues affecting multiple parts of the 3AC.  The first issue concerns the procedural vehicle under which Mr. Parson brings certain claims.  Each of the 3AC's counts suggests Mr. Parson means to bring claims under the United States Constitution's Eighth Amendment.  (*See* ECF No. 31 at 6–14.)  To the extent he seeks to bring claims *directly* under the United States Constitution, he cannot do so.  It is well established that a plaintiff generally cannot assert claims directly under the Constitution.  Instead, the usual procedural vehicle for such claims is 42 U.S.C. § 1983.  *See, e.g.*, *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) ("Plaintiff has no cause of action directly under the United States Constitution …. [A] litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983." (citing cases)); *Blackwell v. W. St. Paul Police Dep't*, No. 23-CV-0661 (ADM/DJF), 2023 WL 3997967, at *2 (D. Minn. May 23, 2023) (citing cases, including *Azul-Pacifico*), *report and recommendation adopted*, 2023 WL 3996266 (D. Minn. June 14, 2023).  Any attempt to bring direct constitutional claims is legally frivolous, and because this problem is not fixable, the Court recommends dismissing these claims with prejudice.

### B.    Claims Under 42 U.S.C. § 1988

In Counts 1, 4, and 5, Mr. Parson purports to bring claims under 42 U.S.C. § 1988.  (*See* ECF No. 31 at 6, 12, 14.)  Section 1988 establishes certain procedures governing "[p]roceedings in vindication of civil rights" and provides for attorney fees and expert fees in certain situations. *See* 42 U.S.C. § 1988(b)–(c).  To the extent Mr. Parson mentions section 1988 only to highlight Defendants' possible future liability for such fees if the prerequisites are satisfied, the Court need not opine on whether section 1988 applies here.  But Mr. Parson cannot bring claims against Defendants directly as free-standing claims under section 1988.  The United Sates Supreme Court has clarified that section 1988 establishes no independent cause of action.  *See, e.g.*, *Moor v. Alameda Cnty.*, 411 U.S. 693, 702 (1973) ("Section 1988 does not enjoy the independent stature of an 'Act of Congress providing for the protection of civil rights[.]'  Rather, as is plain on the face of the statute, the section is intended to complement the various acts which do create federal causes of action for the violation of federal civil rights.") (citations and footnote omitted); *see also, e.g.*, *Drake v. Obama*, 664 F.3d 774, 785 n.5 (9th Cir. 2011) (same); *Berry v. City of Muskogee*, 900 F.2d 1489, 1503 (10th Cir. 1990) (same).  For these reasons, the Court recommends dismissing the 3AC with prejudice to the extent it seeks to press independent claims under 42 U.S.C. § 1988.

### C.    Claims under 42 U.S.C. § 2000dd

Counts 1–3 and 5 each refer to 42 U.S.C. § 2000dd.  (*See* ECF No. 31 at 6–7, 10, 14.) Under § 2000dd(a), "[n]o individual in the custody or under the physical control of the United States Government … shall be subject to cruel, inhuman, or degrading treatment or punishment." As this wording suggests, however, section 2000dd bars certain treatment to those in the custody or control of *federal* authorities.  It does not provide any cause of action to individuals—like Mr. Parson—who are subject to *state* custody or control.  *See, e.g.*, *Holloway v. Governor, N.H.*, No. 21-CV-0865 (PB), 2022 WL 4468548, at *3 n.3 (D.N.H. Sept. 26, 2022); *Green v. Vasquez*,

No. 2:22-CV-00480 (KRS), 2022 WL 2643567, at *2 (D.N.M. July 8, 2022). The Court therefore recommends dismissing the 3AC with prejudice to the extent Mr. Parson purports to bring claims under 42 U.S.C. § 2000dd.

### D.    Claims Under the Minnesota Constitution

In Counts 1–3 and 5, Mr. Parson seeks to bring claims under certain provisions of Article I of the Minnesota Constitution—specifically, sections 2 and 5. (*See* ECF No. 31 at 6, 10, 14.) These claims also fail as a matter of law, as the United States Court of Appeals for the Eighth Circuit has held there is no private right of action for violations of the Minnesota Constitution. *See Eggenberger v. W. Albany Twp.*, 820 F.3d 938, 941 (8th Cir. 2016) (citing cases); *see also, e.g.*, *Pittman v. Swanson*, No. 11-CV-3658 (PJS/TNL), 2023 WL 2404044, at *15 n.15 (D. Minn. Jan. 27, 2023) (citing *Eggenberger*), *report and recommendation adopted*, 2023 WL 2238703 (D. Minn. Feb. 27, 2023). The Court accordingly recommends dismissing the 3AC with prejudice to the extent it brings claims under the Minnesota Constitution.

### E.    Claims Against MDHS

Counts 1 and 5 assert claims against MDHS, with Count 5 naming MDHS as the only defendant. (*See* ECF No. 31 at 6, 14.) Sovereign immunity bars these claims. Under the United States Constitution's Eleventh Amendment, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State …." U.S. Const. amend. XI. The wording here uses the phrase "another State," but it is black-letter law that unconsenting States are also immune from their own citizens' federal suits. *See, e.g.*, *PennEast Pipeline Co., LLC v. New Jersey*, 141 S. Ct. 2244, 2258 (2021) (citing *Hans v. Louisiana*, 134 U.S. 1 (1890)); *Elder v. Gillespie*, 54 F.4th 1055, 1062 (8th Cir. 2022) (citing *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)). This immunity covers claims for any form of relief; not just damages claims. *See, e.g.*, *Kentucky v. Graham*, 473

U.S. 159, 167 n.14 (1985) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978) (*per curiam*)); *Monroe v. Ark. State Univ.*, 495 F.3d 591, 594 (8th Cir. 2007) (citing cases). Eleventh Amendment sovereign immunity generally deprives federal courts of subject matter jurisdiction over covered claims. *See, e.g.*, *PennEast Pipeline Co.*, 141 S. Ct. at 2259 (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996)); *Courthouse News Serv. v. Gilmer*, 48 F.4th 908, 911 (8th Cir. 2022) (citing *Edelman*, 415 U.S. at 677–78).

While Mr. Parson does not name the State of Minnesota *per se* as a defendant, he names MDHS, an agency of the State, and state agencies qualify for the same sovereign immunity as states themselves. *See, e.g.*, *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1999) (citing cases); *281 Care Comm. v. Arneson*, 638 F.3d 621, 632 (8th Cir. 2011) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)). Because MDHS qualifies for Eleventh Amendment sovereign immunity, the Court recommends dismissing the 3AC's claims against MDHS without prejudice based on lack of subject matter jurisdiction. It follows that because Count 5 names MDHS exclusively, the Court recommends dismissing Count 5 in its entirety on the same basis.

### F.    Official Capacity Damages Claims

The 3AC seeks monetary damages generally on all counts against all Defendants "jointly or separately" (*see* ECF No. 31 at 17). This means the 3AC's various section 1983 claims all seek damages from the named individual Defendants, not just in their individual capacities, but also in their official capacities as employees of the State of Minnesota. Any such claims are nonviable.

Claims against individual defendants under section 1983 can name them in their individual capacities, their official capacities, or both. *See, e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (discussing differences between individual-capacity claims and official-capacity claims); *Gorman v. Bartch*, 152 F.3d 907, 914 (8th Cir. 1998) (same (citing *Hafer*)). To the extent a plaintiff sues

a state official in his or her official capacity, the claims are not "against the official" but "rather …
against the official's office," and so are "no different from [claims] against the State itself." *Will
v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing cases); *see also, e.g.*, *Veatch v.
Bartels Lutheran Home*, 627 F.3d 1254 (8th Cir. 2010) (citing *Baker v. Chisom*, 501 F.3d 920, 925
(8th Cir. 2007)).  Under these precedents, to the extent Mr. Parson seeks damages against the
individual defendants in their official capacities, he seeks damages against the State of Minnesota.

But any such claims against the State are barred by the State's sovereign immunity as
discussed above.  Thus, to the extent Mr. Parson's damages demand extends to his official-capacity
claims against the individual defendants, Eleventh Amendment sovereign immunity bars those
claims.  *See, e.g.*, *Papasan v. Allain*, 478 U.S. 265, 278 (1986) (citing *Ford Motor Co. v. Dep't of
Treasury of Ind.,* 323 U.S. 459 (1945)); *Elizabeth M. v. Montenez*, 458 F.3d 779, 784 (8th Cir.
2006) (citing *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997)).  The Court recommends
dismissing the 3AC without prejudice for lack of subject matter jurisdiction to the extent it purports
to bring damages claims against the individual Defendants in their official capacities.[4]

## III.    Count-Specific Issues

### A.    Count 1

Having addressed the 3AC's overarching deficits, the Court turns to its specific counts.
What remains of Count 1 is a claim under section 1983 for violating the United States

---

[4] The 3AC also contains a nominal claim for injunctive relief.  (*See* ECF No. 31 at 17,
requesting "other legal, injunctive, or equitable relief as the Court deems just and fair".)  To the
extent the 3AC's injunctive-relief claim seeks prospective injunctive relief and targets the
individual defendants in their official capacities, Eleventh Amendment sovereign immunity does
not bar those claims.  This is because of the doctrine of *Ex parte Young*, 209 U.S. 123 (1908).  *See,
e.g.*, *Reed v. Goertz*, 143 S. Ct. 955, 960 (2023) (noting doctrine); *Johnson v. Griffin*, 69 F.4th 506,
512 (8th Cir. 2023) (discussing doctrine).  As discussed below, Mr. Parson's claim for injunctive
relief fails for different reasons.

Constitution's Eighth Amendment, as asserted against the individual Defendants in their individual capacities. (*See* ECF No. 31 at 6.) In relevant part, the Eighth Amendment states that "cruel and unusual punishment" "shall not" be "inflicted." U.S. Const. amend. VIII. Technically, the Eighth Amendment binds the federal government, but under the Fourteenth Amendment, the ban on cruel and unusual punishments applies to states as well. *See, e.g.*, *Jones v. Mississippi*, 141 S. Ct. 1307, 1314 (2021); *Brown v. Precythe*, 46 F.4th 879, 883 (8th Cir. 2022) (en banc) (citing *Miller v. Alabama*, 567 U.S. 460, 479 (2012)).

Mr. Parson bases Count 1 on allegedly improper medical care. (*See* ECF No. 31 at 6– 7.) The United States Supreme Court has held that "although accidental or inadvertent failure to provide adequate medical care to a prisoner would not violate the Eighth Amendment, 'deliberate indifference to serious medical needs of prisoners' violates the Amendment because it constitutes the unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *see also, e.g.*, *Leonard v. St. Charles Cnty. Police Dep't*, 59 F.4th 355, 360 (8th Cir. 2023) (noting that prison officials can be liable for "'deliberate indifference'" to prisoner's "'serious medical needs'" (quoting *Olson v. Bloomberg*, 339 F.3d 730, 735 (8th Cir. 2003)).

To plead an Eighth Amendment claim based on improper medical care, a plaintiff must allege that: (1) he had objectively serious medical needs; and (2) defendants subjectively knew of, but deliberately disregarded, those needs. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997); *Amen El v. Schnell*, No. 20-CV-1327 (DSD/ECW), 2022 WL 1110981, at *11 n.12 (D. Minn. Jan. 31, 2022) (citing *Dulany*), *report and recommendation adopted*, 2022 WL 766402 (D. Minn. Mar. 14, 2022), *aff'd*, No. 22-2115, 2022 WL 17228817 (8th Cir. July 29, 2022). To establish deliberate disregard, a prisoner must allege "more than negligence, more even than gross

negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Est. of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995); *see also, e.g.*, *DeShane v. City of Minneapolis*, No. 21-CV-1452 (DWF/HB), 2022 WL 624579, at *6 (D. Minn. Mar. 3, 2022) (quoting *Rosenberg*).

The 3AC fails to assert particularized allegations against Defendants Johnston and Lundquist in connection with Count 1. Mr. Parson generally asserts that "Defendants" denied his request to be seen by a health professional other than Dr. Barney (ECF No. 31 at 4), but he does not allege facts from which a reasonable inference might be drawn that either Defendant Johnston or Defendant Lundquist was involved in that denial or—to the extent that they were—that they had sufficient notice of Dr. Barney's alleged misconduct to have reason to grant Mr. Parson's request. It is not enough for a plaintiff to assert claims against defendants sued in their individual capacities collectively, rather, the plaintiff must allege facts demonstrating each defendant's particular involvement in the unconstitutional conduct alleged. *Beck v. LaFleur*, 257 F.3d 764, 766 (8th Cir. 2001); *see also Pittman v. Swanson*, No. 11-cv-3658 (PJS/TNL), 2023 WL 2404044, at *2 (D. Minn. Jan. 27, 2023), *report and recommendation adopted*, 2023 WL 2238703 (D. Minn. Feb. 27, 2023) ( "[I]t is not enough for a plaintiff seeking relief from a defendant in the defendant's individual capacity to allege that his rights were violated; the plaintiff must allege that his rights were *violated by the defendant*.") (emphasis in original). The Court recommends dismissing Count 1 to the extent it asserts claims against Defendants Lundquist and Johnston without prejudice for these reasons.

In contrast, the 3AC asserts detailed allegations against Defendant Barney regarding Mr. Parson's requests for medical care and Defendant Barney's refusal to provide such care. (ECF No. 31 at 35.) These allegations are sufficient to survive prescreening review under 28 U.S.C.

§ 1915, and the Court recommends allowing what remains against Count 1 as to Defendant Barney to go forward. This recommendation is not a determination that Mr. Parson's claims are ultimately viable, however. The fact that the Court does not recommend dismissal at this time does not preclude Defendant Barney from moving to dismiss the 3AC, asserting any argument regarding the adequacy of Mr. Parson's pleading, or raising any other defense to Mr. Parson's claims.

B.    **Count 2**

Count 2 claims, in part, that Defendant Barney violated Mr. Parson's rights under the United States Constitution's Eighth Amendment by denying him medical care. (*See* ECF No. 31 at 7–9.) This Count rises and falls with Count 1, which also names Defendant Barney and is based on the same alleged improper denial of medical care. Consequently, the Court recommends dismissing Count 2 with prejudice, as duplicative, to the extent it reasserts his Eighth Amendment claim. *See, e.g.*, *CH Bus Sales, Inc. v. Geiger*, No. 18-CV-2444 (SRN/KMM), 2019 WL 1282110, at *11 (D. Minn. Mar. 20, 2019) (dismissing duplicative claim); *Daum v. Planit Sols., Inc.*, 619 F. Supp. 2d 652, 657 (D. Minn. 2009) (same).

Count 2 also claims Defendant Barney was negligent in denying him proper medical treatment. (*See* ECF No. 31 at 7-9.) To prevail on a claim of medical negligence under Minnesota law, a plaintiff must establish: "(1) the standard of care recognized by the medical community as applicable to the particular defendant conduct, (2) that the defendant in fact departed from that standard, and (3) that the defendant's departure from the standard was a direct cause of [the plaintiffs] injuries." *Plutshack v. Univ. of Minn. Hosps.,* 316 N.W.2d 1, 5 (Minn.1982). In addition, a plaintiff must serve, along with the summons and complaint, an affidavit verifying that: (1) an expert has reviewed the facts underlying the medical negligence claim and opines that the defendant deviated from the applicable standard of care; or (2) expert review could not reasonably be obtained before the action was commenced due to the applicable statute of limitations.

CASE 0:12-cv-00646-DWF-DJF    Doc. 35    Filed 08/24/23    Page 15 of 21

Minn.Stat. § 145.682, subds. 2-4. "[M]andatory dismissal with prejudice" results when the plaintiff does not provide the expert review affidavit "within 60 days after demand for the affidavit[.]" *Id.* § 145.682, subd. 6(a).

Here, Mr. Parson fails to plead the necessary elements to establish a medical negligence claim since the 3AC does not address any standard of care recognized by the medical community that Defendant Barney is alleged to have violated. There is also no indication Mr. Parson has obtained the requisite affidavit from a medical expert necessary to avoid dismissal under Minnesota law. While, in theory, Mr. Parson would have 60 days to produce the required affidavit after any demand for it is made to avoid dismissal with prejudice, his ability to meet this requirement is questionable in light of the significant passage of time since he filed this action. Given that more than ten years have now passed since the alleged negligence occurred, procuring an affidavit at this time is implausible at best. Because Mr. Parson does not point to any standard of care that Dr. Barney allegedly violated, and because he has not proffered an affidavit in support of his medical negligence claim as required under Minnesota law, the Court recommends his common law negligence claim be dismissed without prejudice.

### C.    Count 3

Count 3 also targets only Defendant Barney and alleges both "Denial of Medical Care" and "Discrimination." (ECF No. 31 at 10.) Count 3 asserts claims under section 1983 arising under the Eighth Amendment, 42 U.S.C. § 12132, and 29 U.S.C. § 794.[5] (*Id.*) To the extent Count 3 brings an Eighth Amendment claim against Defendant Barney based on allegedly improper denial

---

[5] Count 3 also asserts direct claims under the United States and Minnesota Constitutions and a claim under 42 U.S.C. §§ 2000dd, which are not cognizable for the reasons previously discussed.

of medical care, it is duplicative of Count 1. The Court recommends dismissing that portion of Count 3 with prejudice for this reason.

This leaves Mr. Parson's claims under 42 U.S.C. § 12132 and 28 U.S.C. § 794. Section 12132 is a provision of the Americans with Disabilities Act of 1990, Pub. L. No. 101-336, 104 Stat. 337 (codified as amended, as relevant here, at 42 U.S.C. §§ 12131–34). Under section 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." To state a section 12132 claim, a plaintiff must allege "'(1) that he is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the [a public entity's] services, programs, or activities, or was otherwise subjected to discrimination by the [public entity]; and (3) that such exclusion, denial of benefits, or other discrimination was by reason of his disability.'" *Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020) (quoting *Baribeau v. City of Minneapolis*, 596 F.3d 465, 484 (8th Cir. 2010)); *see also, e.g.*, *Jackson v. Hennepin Hosp.*, No. 19-CV-2392 (PJS/ECW), 2020 WL 532973, at *3 (D. Minn. Jan. 3, 2020) (citing cases), *report and recommendation adopted*, 2020 WL 528898 (D. Minn. Feb. 3, 2020).

Under this standard, Mr. Parson's 3AC fails to state a claim under section 12132. Assuming Mr. Parson had a qualifying disability, nothing in the 3AC suggests Defendant Barney decided not to provide benefits to Mr. Parson *because of* that disability.[6] (*See* ECF No. 31 at 10- 12.) Instead, the 3AC largely appears to ascribe Defendant Barney's conduct to simple cruelty or racial animus. (*Id*. at 5, 11.) Because the facts alleged in the 3AC do not support an

---

[6] The Court makes no determination regarding whether Mr. Parson had a qualifying disability under section 12132.

inference that disability status somehow motivated the alleged denial of treatment, the Court recommends dismissing Count 3 to the extent Mr. Parson asserts a claim under section 12132.

Count 3 also asserts a claim under 29 U.S.C. § 794, which is part of the Rehabilitation Act of 1973, Pub. L. No. 93-112, 87 Stat. 355 (codified as amended at 29 U.S.C. §§ 701–797b). Under section 794(a), "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency …." The law is clear that "[c]ases interpreting either the ADA or the Rehabilitation Act are 'applicable and interchangeable' because the Acts are 'similar in substance.'" *Gustafson v. Bi-State Dev. Agency of Mo.-Ill. Metro. Dist.*, 29 F.4th 406, 412 (8th Cir. 2022) (quoting *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999)); *see also, e.g.*, *Murphy by Murphy v. Harpstead*, 421 F. Supp. 3d 695, 713 (D. Minn. 2019) (citing *Gorman*, 152 F.3d at 912). The Court accordingly recommends dismissing Count 3 to the extent it asserts a section 794 claim for the reasons previously discussed—the 3AC does not assert that any improper conduct was motivated by discriminatory animus based on an alleged disability. Because none of the grounds for relief asserted in Count 3 are potentially viable, the Court recommends dismissing this Count in its entirety.[7]

---

[7] Mr. Parson asserts racial discrimination based on Dr. Barney's use of an alleged derogatory racial slur against him (ECF No. 31 at 5, 11), but does not bring a claim under the Constitution's Equal Protection Clause (*see generally* ECF No. 31). Even if he had, the Court would be compelled to recommend that it be dismissed because Mr. Parson makes no allegation that individuals of other racial classifications received preferential or different medical care. *See Engquist v. Ore. Dep't of Agr.*, 553 U.S. 591, 601 (2008) (equal protection plaintiffs must "allege that they have been arbitrarily classified as members of an 'identifiable group,'" then claim that they have experienced unequal treatment because of that classification); *Adam & Eve Jonesboro, LLC v. Perrin*, 933 F.3d 951, 959-60 (8th Cir. 2019) ("absent this threshold showing" the plaintiff "does not have a viable equal protection claim").

**D.    Count 4**

Count 4 asserts claims against Defendants Johnston and Lundquist under 42 U.S.C. § 1983 based on their alleged failure to properly train or supervise Defendant Barney and their alleged "Condoning the denial of Medical Care, Negligence, and Discrimination" by Defendant Barney.[8] (ECF No. 31 at 12.)  Since the Court is unaware of any cause of action for "condoning" negligent or discriminatory conduct, it construes Count 4 as raising failure-to-train and failure-to-supervise claims.  Mr. Parsons asserts these claims against Defendants Johnston and Lundquist in both their individual and official capacities (*see id.*).

The Court addresses the individual-capacity claims first.  To plead a failure-to-train or failure-to-supervise claim under section 1983, a plaintiff must allege that

> (1) the supervisor was on notice of a pattern of unconstitutional acts committed by subordinates; (2) the supervisor was deliberately indifferent to or tacitly authorized the pattern of unconstitutional acts; (3) the supervisor failed to take sufficient remedial action to address the pattern of unconstitutional acts; and (4) the supervisor's failure to remedy the pattern of unconstitutional acts proximately caused the plaintiff's injury.

*Johnson v. Ramsey Cnty. ADC*, No. 22-CV-0494 (ECT/JFD), 2023 WL 119451, at *4 (D. Minn. Jan. 6, 2023) (quoting *Cole v. Does*, 571 F. Supp. 3d 1033, 1044 (D. Minn. 2021)); *see also, e.g.*, *Sturgeon v. Faughn*, 36 F.4th 804, 809 (8th Cir. 2022) (quoting *Livers v. Schenck*, 700 F.3d 340, 355 (8th Cir. 2012)).

The Court concludes Mr. Parson fails to state individual-capacity claims for failure to train or supervise because he does not allege Defendants Johnston or Lundquist were on notice of any ongoing pattern of misconduct such as the conduct he ascribes to Defendant Barney.  He further

---

[8] Count 4 also asserts claims under 42 U.S.C. § 1988, which fail for the reasons previously stated:  The statute does not establish an independent cause of action.  Mr. Parson's Count 4 section 1983 claim under the Eighth Amendment should be dismissed as duplicative of Count 1.

fails to identify any remedial action they should have taken but failed to take. He merely asserts, in conclusory fashion, that Defendants Johnston and Lundquist "acted with conscious disregard" for his injuries and "failed to train and supervise Dr. Barney." (ECF No. 31 at 12-13.) The Court need not credit such conclusory assertions in assessing the viability of these claims. *See, e.g.*, *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555); *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022). In light of these failures, the Court recommends dismissing Count 4 to the extent it purports to bring claims against Defendants Johnston and Lundquist in their individual capacities.

This leaves the question of whether Count 4 properly pleads claims against Defendants Johnston and Lundquist in their official capacities. Under the doctrine of *Ex parte Young*, Mr. Parson can bring official-capacity claims against Defendants Johnston and Lundquist for prospective injunctive relief only. *See, e.g.*, *Reed v. Goertz*, 143 S. Ct. 955, 960 (2023); *Johnson v. Griffin*, 69 F.4th 506, 512 (8th Cir. 2023). The 3AC asserts a nominal claim for injunctive relief (*see* ECF No. 31 at 17, demanding "other legal, injunctive or equitable relief"), but it does not identify what equitable relief, if any, Mr. Parson might be seeking. A claim for injunctive or declaratory relief must be sufficiently precise to put the court and the defendants on notice of what the plaintiff is asking the court to do. *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed.") Mr. Parson's claim for injunctive relief is insufficiently precise to move forward.

Furthermore, to state an official-capacity claim under section 1983, "a plaintiff must show either that the official named in the suit took an action pursuant to an unconstitutional governmental policy or custom, or that he or she possessed final authority over the subject matter

at issue and used that authority in an unconstitutional manner." *Nix v. Norman*, 879 F.2d 429, 433 (8th Cir. 1989); *see also, e.g.*, *Washington v. Craane*, No. 18-CV-1464 (DWF/TNL), 2019 WL 2147062, at *4 (D. Minn. Apr. 18, 2019) (quoting *Nix*), *report and recommendation adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019).  Count 4 fails to assert any action Defendants Lundquist and Johnston allegedly took according to any particular policy or custom, or to identify any way in which they may have used their authority in an unconstitutional manner.  (*See* ECF No. 31 at 12– 13.)  The Court accordingly recommends dismissal of Count 4 in its entirety.

## CONCLUSION

The Court recommends dismissing Counts 2-5 of the 3AC under 28 U.S.C. 1915(e)(2) in their entirety and further recommends dismissing the official-capacity claims against all Defendants.  Part of Count 1 against Defendant Barney in her individual capacity remains, however.  The Court therefore orders service on Defendant Barney.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1.  Mr. Parson must submit a properly completed Marshal Service Form (Form USM-285) for Defendant Sharyn L. Barney.  If Mr. Parson does not complete and return the Marshal Service Forms within 30 days of the date of this Order and Report and Recommendation, the Court may recommend that this matter be dismissed without prejudice for failure to prosecute.  The Court will provide Mr. Parson with the Marshal Service Forms.

2.  Upon return of the completed Marshal Service Forms, the Court directs the Clerk of Court to seek waivers of service from Defendant Barney—in her individual capacity—consistent with Rule 4(d) of the Federal Rules of Civil Procedure.

3.  If Defendant Barney fails without good cause to sign and return a waiver within 30 days of the date that the waiver is mailed, the Court will impose upon her the expenses later incurred in effecting service of process.  Absent a showing of good cause, reimbursement of the costs of service is

mandatory and will be imposed in all cases in which a defendant does not sign and return a waiver of service form.  *See* Fed. R. Civ. P. 4(d)(2).

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    **Count 1** of Plaintiff Raymond A. Parson, Jr.'s Third Amended Complaint be allowed to proceed at this time, to the extent it asserts claims against Defendant Barney in her individual capacity under 42 U.S.C. § 1983 arising under the Eighth Amendment; and

2.    All Counts in the Third Amended Complaint be **DISMISSED WITH PREJUDICE** (on grounds of frivolousness) to the extent they bring direct claims under the United States or Minnesota Constitutions, 42 U.S.C. § 1988 or 42 U.S.C. § 2000dd, or are duplicative of the claims asserted in Count 1.

3.    The remainder of the Third Amended Complaint be **DISMISSED WITHOUT PREJUDICE**.

Dated: August 24, 2023                          *s/ Dulce J. Foster*
                                                DULCE J. FOSTER
                                                United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).